I, John, the President of the United States of America, and the President of the United States of America, and the President of the United States of America, the Honorable W. Lavin, Mr. President. Keep the person still. You may be seated. Keep the person still. Mr. President, I would like to pass No. 1 through 2 to your assistant, Mr. President. Students, honored justices, and held court, and valued members of the South Suburban College community, good morning and welcome to Law Day 2024. It is with great pleasure and enthusiasm that I extend a very warm welcome to each and every one of you. I am Dr. Ronald Kawana, Jr. I am the Associate Vice President of Accreditation and Institutional Effectiveness at the college. I want to thank President Stokes for allowing me the privilege of standing here before you today. On behalf of our Board of Trustees, President Dr. Les Stokes, our administration, our faculty, welcome to South Suburban College. As we gather here today, I am reminded of my incredible journey, and reflect on my extensive involvement with South Suburban College, and the wonderful opportunities provided to our students in all the programs offered at the college, but particularly programs offered through our Legal Studies program. I have been teaching law classes at the college for 38 years, and I've had the privilege to see many of our students become paralegals, court reporters, attorneys, and police officers. This is a full circle for me. After practicing law on my own law firm for over 16 years, and having served as the Dean of the Legal Studies program for the college for many years, I have a profound appreciation for the power this time of exposure provides to our campus community. Events like this provide us with a unique opportunity to come together as a community and collaborate on initiatives that expose our students to a vast array of possibilities and opportunities that await them. It is through events like this that we can inspire and empower our students to reach their fullest potential and to pursue their dreams and confidence and determination. A very special thank you to the Justice Department of the Appellate Court for providing our students and the community with an opportunity to hear an oral argument before the Appellate Court. I am deeply passionate about the work that we do here at South Suburban College, and together we can make a difference in the lives of our students and the future of our community. Once again, I extend a very warm welcome to all of you. Thank you for joining us today. I look forward to the discussions and collaborations that will undoubtedly emerge from our time together. Thank you once again. And at this time, I'd like to have opening remarks by Justice Sophia Thompson. Thank you. Good morning. That was pretty weak. Good morning. Good morning. I am Justice Sophia Thompson. I am Justice on the Illinois Appellate Court in the First Judicial District. For those of you who are not familiar with our district system, the First Judicial District is here in Crook County. I am honored and privileged to be here yet again at South Suburban College with my colleagues. We've done this in the past many, many times with the student body of South Suburban College and surrounding schools. And so we are pleased and honored to be invited back, and we wish to express our special thanks to all of the faculty and the administration here at South Suburban College. We welcome you to this space. We have now converted this auditorium into a courtroom, a courtroom of the First District's Appellate Court. This is Law Day. We pause here at South Suburban College and in many institutions across the country to celebrate what is sacred in our country, to celebrate the rule of law. And so you now join us as a part of that big celebration, and we welcome you to this occasion. Today, the justices of the Illinois Appellate Court will decide a real case. For those of you who are not familiar with our justice system in Illinois, every case starts in the trial court. Once a trial judge has entered a judgment, a ruling, a final decision in a case, the losing party, the person who feels as though there were errors made in the trial court, has the right to appeal to the Illinois Appellate Court. Unlike in the trial court where there is a single judge sitting, maybe with a jury, once a case is taken on appeal, three justices on the appellate court will hear arguments from the parties concerning what happened in the trial court. Those same three judges will decide on appeal who should prevail and who should not. If the case is reversed, sometimes it is demanded to the trial court for further proceedings. However, if the case is affirmed, that concludes the matter in the appellate court unless and until there is a further proceeding in our Illinois Supreme Court, which is the highest court in our state. I wish to acknowledge my colleagues who will be hearing this appeal and deciding the issues on appeal. They are behind me, Presiding Justice Terry Ladd. Good morning. Good morning. Justice Aurelia Kaczynski and Justice Mary Allen Conley. Good morning. Now, I am convinced that many of you are familiar with the facts in this case, and they are brief. But in the event that some of you have not had the opportunity to review this matter, or to at least review the summary facts, I am going to share these facts with you. And after I share these facts, I will turn the matter over to Presiding Justice Ladd, who will then manage or rule or preside over the oral argument. The case is People v. Gilbert Feliciano. A grand jury invited Gilbert Feliciano for the robbery and murder of Stanley Beckowitz. Feliciano entered a decree of not guilty, and the case proceeded to a jury trial. Feliciano filed a pro se post-trial motion. Pro se means he didn't have an attorney. He filed it on his own. He alleged in his motion that his trial counsel provided ineffective assistance for counsel. At what we call a tranquil hearing, Feliciano argued that trial counsel was ineffective for failing to present exculpatory evidence, and that he wanted to testify, but that trial counsel advised him not to testify. The circuit court, the trial court in the Circuit Court of Cook County, heard the motion and denied it. The circuit court sentenced Feliciano to 54 years in jail. On direct appeal, this appellate court, same panel, essentially, my respective colleagues, including me, decided that Feliciano's trial was fair and affirmed the conviction and the sentence. Feliciano then filed, on his own, without the assistance of counsel, a pro se petition for post-conviction relief. In his petition, Feliciano alleged that at the time of the murder, he was with a church group in Cleveland, Ohio. He did not remember the name of the church or any of the congregation members. Still, he stated that he knew the location of the church and that he could provide direction. He claimed that he provided this information to his trial attorney. He argued that trial counsel provided ineffective assistance for failing to call these alibi witnesses. Feliciano failed to attach any affidavit for any of his proposed witnesses. The circuit court, the trial court here in Cook County, summarily dismissed Feliciano's pro se petition for post-conviction relief. I turn the case over now to Providing Justice, Terry Levin. Good morning. We're going to proceed to oral argument. Let's see who we have as counsel for the state and counsel for the defendant. Okay. We're looking for maybe like 20 to 30 minutes of oral argument. You can start off with at least five minutes uninterrupted, and then we'll do our best to badger you a little bit with some questions. And if we ask too many and you need a little bit more time, we'll be generous in that respect. So let's hear from the defendant. Thank you, Your Honors. My name is John Verfell. I represent the petitioner appellant, Gilbert Feliciano. This is a first-stage post-conviction case where the defendant filed a pro se petition for post-conviction relief, which raised the gist of a constitutional claim. And therefore, it should have advanced to second-stage proceedings where an attorney could assist him in investigating that claim and placing it in the property before him. The claim was that Mr. Feliciano was in Cleveland when the alleged events occurred that resulted in the decedent's passing. Mr. Feliciano alleges in his petition that he told trial counsel he was at a church group, that he had met with a church pastor and the pastor's wife in the parking lot of that church, and that the church was located next to the Metro Hospital in Cleveland, Ohio. He says he met these people on the day that the supposed attack occurred, which again resulted in the decedent's death. In addition to those facts, he alleged that he told trial counsel before trial that he was in Cleveland and asked counsel to investigate that alibi, but counsel never did. He also alleged that he could not go to the law library when he drafted his post-conviction petition because it was closed and that his movement within the prison was severely limited because of lockdowns due to COVID-19. These allegations were sufficient to meet the very low threshold for advancement to second-stage proceedings. The Post-Conviction Hearing Act requires second-stage proceedings when the petitioner raises claims that are not fantastic or delusional or positively rebutted by the record. And here, the claims are not fantastic, they're not delusional, and they are not positively rebutted by the record. I want to stress that while there were no affidavits from the potential alibi witnesses, the Post-Conviction Hearing Act does not require affidavits to be presented if the defendant provides an explanation for why the affidavits cannot be found. And here, the defendant did just that. He told the court through his post-conviction petition that he didn't know the names of the potential witnesses, that he didn't know the church, although he knew how to get to it. And obviously, he couldn't get to it because he was in prison. He also asserted that he couldn't go to the law library. This was a sufficient explanation. In essence, what he was saying is he reached a dead end. He did all he could do from prison, and he needed an attorney to assist him in placing his claim in the proper legal court. I want to stress, in addition to that, this isn't a vague or conclusory allegation. It's very specific. He's saying where he was, and he's giving all the information he knows with respect to who he met, on the date he met, and where that meeting took place. All of these facts could be corroborated if somebody – or could be confirmed, corroborated, or, in fact, refuted if somebody actually went to Cleveland or investigated these specific claims. I think that no one has ever actually investigated this alibi claim that the defendant wished to make. According to the post-conviction petition, the allegations of which we have to assume to be true, trial counsel never looked into the possibility that Mr. Feliciano was in Cleveland. All we're asking for in this case is that the matter be remanded so that an attorney can look at these allegations, can send an investigator to Cleveland, to determine whether Mr. Feliciano was, in fact, there when the events took place that resulted in his conviction. It's somewhat surprising that the state is opposing relief in this particular case because it would have an interest in making sure that an innocent person wasn't actually convicted of this crime. No one has ever investigated this case, and if it goes back for second-stage proceedings, one of two things is going to happen. Either post-conviction counsel is going to be able to substantiate the claims in the post-conviction petition and put them in a form that requires a credibility determination to be made by an evidentiary hearing, or post-conviction counsel is going to find that he or she cannot support Mr. Feliciano's pro se alibi claims, in which case the case will end there at second-stage proceedings, but with a full investigation into the possibility that Mr. Feliciano was in Cleveland when these crimes occurred. Now, the state makes a big argument about positive rebuttal. In fact, it says, essentially, that because Mr. Feliciano had an opportunity to argue these claims during the Krankel hearing, he can no longer argue them during post-conviction proceedings. In essence, what the state is arguing is that his omission is the same as evidence positively rebutting the claim, but that's an extreme position to take, and the only cases the state can cite are, essentially, two unpublished second district cases which are factually distinct and outliers in and of themselves. So the state relies on Lanky and Thompson, and in each of those cases, it's factually distinguishable because the defendants in those cases had Krankel hearings but was invited to add new claims during the Krankel hearing itself. In this case, Mr. Feliciano filed a Krankel motion, and the court was very specific during the Krankel hearing that it only wanted to hear evidence and argument with respect to paragraph 10. Paragraph 10 alleged that trial counsel was ineffective for failing to present Brady evidence, in other words, evidence tendered to trial counsel by the state that Mr. Feliciano believed was exculpatory. That cannot be the alibi evidence that he wishes to present here in post-conviction proceedings, but the court was very specific during the Krankel hearing. It said multiple times, Feliciano, we're only talking about one paragraph. The other paragraphs, no. Paragraph 10, what do you want to say about that one paragraph? That's sub 2R1026. Four pages later, the court says, what else do you want to add about your lawyer being ineffective? Only talk about paragraph 10. Three pages after that, what you are saying now is not what I asked you to say. Talk about paragraph 10. You keep getting off on these tangents. A page after that, are you done with paragraph 10, Mr. Feliciano? A page after that, you keep telling me the same thing, Mr. Feliciano, and you didn't do it. This happened, that happened. The only thing we're talking about is paragraph 10. And then finally, a page after that, what else do you want to add in regards to paragraph 10? This was a hearing about a specific allegation that Mr. Feliciano raised in the Krankel portion. Not a wide-ranging hearing where Mr. Feliciano was expected to raise all of the claims that he could have possibly made with respect to post-moot trial counsel's effectiveness. It's also fundamentally unfair to suggest that a pro se petition, a pro se defendant, after trial but before sentencing, may raise every possible claim that he or she could think of with respect to trial counsel's legal effectiveness. That's a standard that we don't even hold the trial attorneys to. Most trial attorneys, in a big case, when they file a motion for a new trial, ask for time to supplement that motion after reviewing all of the transcripts. Here, Mr. Feliciano didn't have all of the transcripts. He couldn't have possibly reviewed them in preparation for filing the Krankel motion. It's highly likely that the trial court would have continued the hearing on the Krankel motion so that he could have pro se gotten the transcripts. I'm going to have some questions, but before I get to the legal questions, I want, for the purpose of our audience here today, to talk about the factual background. How did these two people meet, the defendant and the victim? So, according to the trial record, Mr. Feliciano moved in to see Mr. Lechkiewicz. But he met him when he, the defendant, was a panhandler, a homeless panhandler at a grocery store, and Mr. Lechkiewicz took him into his house. That's correct. Mr. Lechkiewicz was 92 or 93 or 94 at the time, and he asked Mr. Feliciano to move in with him and help assist him with some repairs in his home, because Mr. Lechkiewicz could not adequately maintain his home. He had been cited by the city of Chicago multiple times for problems with respect to his home's maintenance. And before this incident resulted in Mr. Lechkiewicz's death, there was another encounter between the two of them where Mr. Feliciano allegedly struck him on a number of occasions and stole money from him, and the police were called, and they told him to just leave. Am I summarizing that accurately? I would like to add to that, Your Honor. Mr. Lechkiewicz's next-door neighbor saw bruises on his arms. Now, Mr. Lechkiewicz had a history of falls and falling down, and that is solid in the record, and this testimony, the statements of Mr. Lechkiewicz to his neighbors was not introduced as evidence at trial, because the trial judge believed that to be hearsay evidence. So all that was known was that there was an incident that happened in March of 2010 where bruises were seen on Mr. Lechkiewicz's arms. The next-door neighbors came over to Mr. Lechkiewicz's house to discuss those bruises with Mr. Lechkiewicz. Mr. Feliciano, who was living in the basement, came upstairs and argument ensued. Mr. Feliciano called the police. As I understand it, he called the police a few times. They came to the house, and he agreed to leave. He was not arrested, and he was not charged with respect to that incident. And I'll note that even after trial, at sentencing, the trial judge commented on the evidence presented with respect to that incident and said, quote, there was evidence, though very little, as far as I'm concerned, to consider about the so-called prior incident involving Feliciano. I'm not saying it didn't happen, but I'll give it whatever weight I think it is entitled to, which is not a whole lot. That's up to our 1095 yard line. Let's talk about the alibi defense and the failure to get some affidavits or names at all. Even during the pandemic here, during the lockdown, this defendant was able to get affidavits from family members about his good character and attach them to his petition, correct? Correct, Your Honor. Why not the affidavits or evidence regarding his alibis? Well, Your Honor, he didn't know who he was going to get alibi affidavits from because he didn't know their names. He did obviously know who his family members were, but he didn't know the name of the church or the name of the people that he met in the parking lot of that church. So it stands to reason that he didn't know even who to write to, much less who to ask about the potential alibi that he wanted to present. Yes, Your Honor. But explain to me how the defense counsel could be arguably deficient, which is your burden here, for failing to investigate possible alibi witnesses when the defendant admittedly didn't remember the names of the people that he was with. How is a lawyer deficient if the client is deficient? Well, the defendant provided more than enough information for an investigator to find out whether these alibi witnesses… A church in Cleveland next to a hospital? That's enough? A pastor without a name? I believe so. I believe if I were trial counsel, I would send an investigator to Cleveland to look at I don't know how many hospitals they could possibly meet, four, five, six, to see if there are any churches around there, to walk around with a photo of Mr. Feliciano and to ask the pastor or the pastor's wife if they'd ever seen this man. The last question I have relates to other cases that are similar to this that have been decided by the appellate court. The state relies on People v. Smith, which I don't think you mentioned. The Smith case concluded that the defendant's failure to call alibi witnesses failed itself on the merits because the defendant did not provide the name of the alleged alibi witnesses, nor has he attached their affidavits to his petition. Why doesn't Smith control? Smith is distinguishable because not only did the defendant fail to present alibi affidavits, but the Smith defendant also failed to explain why no alibi affidavits could be obtained. Here we have an explanation as to why no alibi affidavits could be obtained, because Mr. Feliciano didn't know the names of the witnesses, he was incarcerated in Kunicoda, Cleveland himself, and he had very limited access to the law library, which is presumably where the only computer he could have used to look up, say, Google Maps. Okay, my colleagues will have some questions now. I do. Let's talk about the alibi witnesses for a minute. In a document that was filed with the clerk of the circuit court on February 19, 2021, which is in the record, if I'm reading this correctly, it appears that Mr. Feliciano was arrested in Cleveland in December of 2010, and then I'm not entirely sure when he was released four days later. And then he was rearrested in Chicago on May 11 of 2011, so maybe one and a half months later. So he was apparently loose in Cleveland for a couple months, but knew that he was wanted for the murder of this guy. He knew that he was wanted for the murder of Mr. Lefkowitz. So he had going at once to track back where the church was. He was in Cleveland, and he didn't do that. Now, I'm going to guess that there are dozens of hospitals in Cleveland and hundreds of churches, but he says in his post-conviction petition, this is a church that was right next to a specific hospital. So while he was in Cleveland, knowing that he was wanted for this murder, he could have just found him and found those people and said, hey, remember, I was with you that day. That's only one part of my question. The second part of my question is when he says, hey, you know what, I was with you that day, how would he know what day he had to talk about? Because Mr. Lefkowitz was alone, bruised, battered, and beaten with a chest of drawers over him in this apartment for several days. And even the police were not able to pinpoint the exact day that the chest of drawers were thrown on top of him that caused some of the injuries. They knew the three-day window of time that these injuries occurred. So for the defendant to say, I was with the pastor on that day, or on which day, which one of those three days were you with the pastor? Were you with him for all three days out in the parking lot? Something about this is not making any sense. And I have to tell you that I don't think your explanation of this is helping any. The third part of my question, and maybe you can answer it, you correctly identified that a post-conviction petition is a defendant's right under the statutes of Illinois, after a trial and after he's been convicted, to petition the court for an opportunity to show that his constitutional rights were violated. It is not a retrial. That's not what it's for. It is for the circuit court to decide that something went wrong in the trial. Evidence came in that shouldn't have come in. Evidence didn't come in that should have come in. Some decision was made by the judge. A jury instruction is not some constitutional right of the defendant. You correctly identified the first phase is the defendant writing a petition in – I'm sorry – a petition written by a defendant, most likely in prison, probably not very well-versed in the law, maybe not well-educated. So the law understands that's going to be pretty loose. It's going to be not very good. So the law only requires that you present the gist of an argument that his trial – that something or some things happened in his trial that violated his constitutional rights. And he can pass his muster on that. Then the second stage is the judge assigns an attorney to shape things up into proper form, do some research, get the law, get some of his arguments put into proper form. And if it passes muster at the second stage, then it goes to the third stage, which is an evidentiary hearing. And I think the students here probably are not aware of a – what is going on here. We're not retrying this case. We're looking at whether or not the judge properly denied his defendant's petition, proposed condition, conviction relief at the first stage. We're trying to say whether the judge was right in saying you did not present the gist of a constitutional violation. So going back to my first two questions, the alibi question, he couldn't have known what days or day he was supposed to have been in this parking lot with his pastor and his wife. And he was in Cleveland for three months out of prison, out of jail. And knowing that he was one of the four murderers, he could have driven to that church and tracked those guys down and said, hey, boy, you can pay an affidavit. So I really don't know the answers to the first two. Thank you, Your Honor. With respect to why he didn't investigate his own case before he was charged, I don't think that the defendant had an obligation to do so. He was arrested and correct in Cleveland on December 18th. And that was because the police asked the Cleveland Police Department to look for him. We actually have that arrest report, which he attached to his post-conviction petition. And I'll note that in that arrest, in that investigative report that was generated by the Chicago police detectives who went over and interviewed him in Cleveland, it notes that he denied any involvement in this crime. In addition to that, it noted that they were looking for him in an area that would be near, within walking distance of the Cleveland Metro Hospital, at least according to Google Maps. But the bottom line is they released him because they didn't seemingly have sufficient basis to continue to hold him. And then he went back to Chicago at some point and was arrested in May, and they released him again. And then he was finally arrested in July, and that's when the state charged him with this particular crime. So you agree, he was out. He could drive around. He could drive to Cleveland if he wanted to and find that church. To be more specific, to say to his attorney, this is the name of the church I was at, this is the parking lot I was at. Oh, and by the way, I think I'll go find the pastor and his wife and ask them if they remember this event. But there was no reason during the time that he was out. He knew he was wanted for this murder. He knew that. He knew the name of the victim. He knew what was going on. So I'm just finding it hard to believe that any rational person would, knowing this, not go drive over to Cleveland and find the name of that church. Well, so what he knew, Your Honor, was that Mr. Lekeovic had passed away, that he had been questioned by police detectives in Cleveland, and that he had been released. I don't think that it's necessarily certain that he knew he was going to ultimately be charged seven months down the road with Mr. Lekeovic's murder. In fact, if he was in Cleveland at the time and believed that he was innocent, then he would have no reason to believe that he would actually be charged with these crimes. He certainly wasn't in a position or maybe wasn't thinking that he needed to start lining up an alibi or collecting evidence for charges in preparation to defend himself against charges that had never been brought. Once he was arrested in July, then he was charged, then he was given an attorney, and he was never released from custody after he was arrested in July and charges were brought and before he had been assigned an attorney. So he certainly couldn't have been driving around to help his attorney after his attorney had been appointed because the attorney had been appointed after he was arrested and not released on bail. Yes, ma'am? The state has argued that because he did not make this argument during the Krankel hearing, which you're going to have – you should probably explain to the students what the Krankel hearing is – that he waived it. However, the record from the trial – the underlying trial indicates that he did raise this issue at the underlying trial. So tell me about – what is your answer to the state's argument that because he didn't raise it in the Krankel hearing, it's too bad, it's gone? Do you want me to answer that question before getting to the one question about the timing? Okay, so just to go back to your other question about how would he know what day he needed to allege his petition, you know, in his petition he said that he didn't really know what the sequence of the timeline was until he actually had gotten to trial. But the bottom line is, you know, Mr. Mikheyevich was seen healthy by his neighbors on October 10th. He was – so that narrowed down the – he couldn't have been attacked on October 10th. He was later found on October 13th, and so the state's theory was that sometime between October 11th and October 13th, he was attacked by an assailant, and he himself identified that assailant as guilty. Now, it's worth noting there is no physical evidence in this case. There's no fingerprints or blood evidence or video evidence that places Mr. Kuznetsky out of the house. It's just the uncross-examined, excited utterances of Mr. Mikheyevich, who may have sincerely believed that Fielder attacked him, but that was never tested. The accuracy of that identification is certainly never tested by cross-examinations. We don't know if he got a good look at his assailant, if his assailant was wearing a mask, if it was based on body type or voice, if he was drinking at the time. We simply don't know anything about that. But aside from that, we do have this time frame, and the question at trial really was the – it was twofold, right? One is the accuracy of the excited utterance identification, but also the causation. I'm certainly not arguing causation here. That's not relevant to this post-conviction proceeding. But the accuracy of the identification is – and so the question is, could Mr. Feliciano – is there any evidence that places Mr. Feliciano in Cleveland during that period of time? And he's saying that he was in the parking lot on October 11th. Not on all three days. He says he has a conversation with the pastor and the pastor's wife in that church parking lot on October 11th. Now that evidence, if presented at trial, would have required the jury to make new credibility determinations. It would have required the jury to consider the possibility that Mr. Feliciano was misidentified by Mr. Lekiovich or that Mr. – or for whatever reason, Mr. Lekiovich's statements with regards to who attacked him were not necessarily credible or credible to support conviction beyond the reason for that. And I will note one more fact. The state's theory was that once Mr. Lekiovich arrived at the hospital and was examined by the doctors, they determined that the injuries were healed. In other words, that the attack occurred several days before he was actually in the hospital, which would place it much closer to the October 11th date rather than the October 13th date. They noted that there was dry blood, that the bruises appeared to be healing on Mr. Lekiovich's body. So the fact that Mr. Feliciano has alleged in his post-conviction petition that the day he was in Cleveland was October 11th – yes, October 11th – is significant because that adds up. That is consistent with the state's theory of when the attack actually occurred and how long Mr. – Okay, Justice Kagan has some questions for you. I have a question about the – thank you. My question is the defendant is alleging that he told his trial counsel about this alibi and the trial counsel basically did nothing, if I understand the facts correctly. How do we know that that's in fact the case and that the trial counsel did not conduct an investigation and in fact found that there was no validity to it? Well, we don't know that. We won't know that. And we can't know that at this stage of the proceedings. But the law requires us to accept as true all of the statements in the post-conviction petition for the purposes of determining whether they need to be investigated further. And certainly Mr. Feliciano will not be able to receive relief on this claim down the road, second or third stage proceedings, unless he can establish that those conversations in fact occurred and that counsel in fact did not actually conduct an investigation. But for the purposes of the first stage evaluation, we assume that the allegations in the pro se petition are true. And if those allegations set forth the gist of the constitutional claim, the petition must advance to second stage proceedings where the post-conviction counsel can make a substantial showing. You do admit, though, that that was not raised at the Crankle hearing, correct? It was not raised at the Crankle hearing. And that dovetails back to your prior argument that I guess I don't understand what the justification is, why we should ignore the fact that the defendant should have raised that in his Crankle hearing. Well, I think that there's a few things there. And just to give the students an explanation of what a Crankle hearing is, so if a defendant is convicted but not yet sentenced, if at any point in time the defendant starts to make allegations orally or in a written motion, a trial counsel is not representing the defendant properly, then the court is supposed to hold a hearing and ask the defendant, without asking counsel or the state's input, why the defendant feels like he's been improperly represented. And let me just interrupt for a moment. If in fact the court heard this testimony and thought that the defendant had a valid claim about his attorney not properly investigating, what options would have been available to the court to address that issue at that time? May I ask for clarification as to what testimony you're referring to, Your Honor? That his attorney did not investigate his alibi defense. Well, so at a Crankle hearing the standard for trial counsel, for the trial courts to appoint an attorney to assist the defendant in alleging ineffective assistance to counsel, which is a similar standard, I guess, to second-stage proceedings, is the possible neglect. So the court is supposed to conduct an inquiry and ask the defendant, why do you think trial counsel was ineffective in your own words? And if the defendant makes a showing of possible neglect, that doesn't mean that the defendant wins or gets a new trial. It means that the court must stop the proceedings at least momentarily, appoint the defendant a new attorney to allege that the defendant's prior attorney was ineffective. So what would have had to have happened in your scenario, I think, as I understand it, Your Honor, is the defendant, if he alleged an alibi claim during the Crankle hearing, the court should have at that point determined whether that shows possible neglect of the case to either appoint counsel or deny the request for counsel to assist him in attacking his prior attorney's conduct, in which case there would have been a record available for the defendant to litigate that issue on direct appeal. Okay, last question. But that didn't happen, and your justification for that is what exactly? It's multifaceted, Your Honor. I think, first of all, the defendant was there to litigate a specific claim and was repeatedly told by the court to confine his comments to paragraph 10. But I think it's also really important to note that nobody ever told this defendant that if he raises a Crankle claim, that any other possible ineffective assistance to counsel claims that he does not include in his Crankle motion or during a hearing on his Crankle motion would be forever waived for future post-conviction proceedings. This is important, and that is an admonishment that is built into the Post-Conviction Hearing Act. And in fact, after sentencing, the trial court cannot recharacterize some other claim by the defendant outside of the post-conviction petition. For example, a 214-01 petition or a petition for habeas corpus, the court can't recharacterize that as a post-conviction petition without giving the defendant a warning that all the claims that the defendant hasn't raised will be forever waived. So like a fundamental basis of waiver is a knowing relinquishment of a right, and here there's simply no knowing relinquishment of a right. In fact, we have in the record the defendant at the Crankle hearing saying, and I quote, I'm sorry. I'm no Perry Mason. I'm trying my best here. I got so much I want to share. I feel my brain is going to pop. I'm not a lawyer. To tell you the truth, I don't know what I'm doing. That's sub to our 1033. This defendant is telling the court during the Crankle hearing he doesn't know what he's doing, and the state, through unpublished cases that are contradicted by published cases, is arguing that's enough to forever waive the defendant's claims during post-conviction proceedings. Okay, I think we've gone well past the timeline that we had suggested, so thank you very much. We'll hear from the state. Thank you, Your Honor. May it please the court, counsel. My name is Assistant State's Attorney Andrew Rassad, and I'm representing the people. Good morning, Justices. The petitioner argued that he received ineffective assistance of counsel because his attorney didn't investigate his alibi claim that he was in Cleveland, Ohio at the time of the incident. He claims that he met a pastor and his wife outside of the church at some unknown location at an unknown date in December – I'm sorry, in October of 2010. I'm sorry, it says October 11th of 2010. He doesn't specify what the name of the church is, what the names of the witnesses are that he says can provide him with his alibi. All he says is he told his attorneys that the church was located right next door to a metro hospital in Cleveland. He claims his attorney should have somehow figured out who these people were based on that scant amount of information and that her failure to do so resulted in her providing ineffective assistance. So primarily the state's arguing forfeiture in this case. The petitioner forfeited his argument because this could have been and should have been brought up at the lengthy Krankel hearing that was conducted in this case. The Krankel hearing lasted for 36 pages of the transcript. And the petitioner was asked repeatedly by the transport if he had anything else to add. Yes, he did specifically ask about that Issue 10, but he also said, What else do you want to say at one point? And he specifically asked anything else about your lawyer being ineffective or whatever. That was the final question that he asked and the petitioner's response was no. And that's in sub 2 R 1041. Not once did he say that he couldn't have done this because he was in Cleveland, Ohio at the time and that he's got witnesses that his attorney should have looked into. The state is relying on those two cases out of the 2nd District. They are unpublished cases and we are citing them for persuasive authority. Defendant's failure to raise this issue at a Krankel hearing resulting in the issue's forfeiture is supported by those cases. In Thompson, the defendant never raised an argument that the trial counsel was ineffective in his method of advocating disputed trial rights, despite ample opportunity to argue his ineffective assistance claims at the Krankel hearing and an explicit opportunity to add claims. The appellate court held, simply put, defendant's ineffective assistance claims against trial counsel were all matters of record that could have been raised on direct appeal. They were not and thus they're forfeited. In Wakey, the defendant's silence during the Krankel hearing regarding his claims of ineffective assistance of counsel caused his post-conviction claims to be forfeited. In that case, just as in the instant case, the trial court repeatedly directed the defendant to present any and all ways in which he believed that his attorney provided ineffective assistance. The appellate court also noted that the issues were obvious and known to him at the time of the Krankel hearing, which is exactly what we have in this case, and they held that the defendant could have and should have raised those issues of the alibi witnesses and the witnesses' purported inability to identify him after Krankel hearing. Because the defendant in that case failed to include those issues when he had the opportunity and for him to do so during the initial Krankel hearing, the second district found that constitutes a forfeiture. So just as the defendants in Wakey and Thompson, the petitioner in this case had an opportunity to raise any and all claims regarding his attorney's ineffectiveness, and he chose not to. This was known to him at the time that he was presenting this to the trial court at the hearing, at the Krankel hearing. The trial court asked him multiple different ways how his attorney was ineffective, and at not one time did he say that his attorney was ineffective for failing to investigate the sound bite. So the state's position isn't that any time that there's a Krankel hearing, that's going to result in the forfeiture of potential ineffective assistance plans. And if you'd counsel, why don't you explain to our audience here what forfeiture is and the consequences of forfeiture in circumstances like this. So forfeiture is a situation where the defendant, it's not that he's knowingly waiving his right, it's that his failure to act or do something results in him not being able to raise that again in the future. So it's different from waiver in that respect that it's not a volunteer relinquishment of the right such as Miranda warnings, for example, if you choose to talk to the police, that's where you're waiving your right so you're knowing that you're doing it and you're waiving it explicitly. Forfeiture is where you fail to do something to preserve your opportunity to raise that in the future. And there are consequences to forfeiture, right? There are consequences to forfeiture, which is what the state is arguing here, that he shouldn't have the opportunity to bring this up now. The opportunity was at that Krankel hearing. He could have developed a full record at the time. His trial counsel could have had an opportunity to respond, to investigate, to respond that she investigated this case potentially, that she investigated those witnesses and that there was a fruitless investigation. But we don't know any of that because the petitioner, for unexplained reasons, did not bring it up at that time. Was he warned that if you don't raise everything here today during this Krankel hearing, oh well, you can't raise it again here before Thursday? No. The state's not arguing he was warned. But the fact that – How would he have known that? He wouldn't. Well, he knew about it. How would he know that not raising an issue during this Krankel hearing forfeited it or whatever if there wasn't some ambush from the court? He wouldn't. The state's not arguing that he would have known that. We're not arguing that he waived it and that he knew about it and deliberately didn't bring it up. Forfeiture by ignorance. No. I think that in this case, because he was afforded the opportunity, it's not that – there's no explanation as to why he would know about something and specifically not bring it up at the time when he had the forum and opportunity to bring it up. That's what the state is arguing, that he forfeited it because of that fact. Regardless of whether he knew he was forfeiting it, that is the state's argument, is that because he had that opportunity and didn't do it. He raised the failure of his attorney to investigate the alibi witness at an earlier point in the trial for them. So I don't know how that's related to him. But in some motion, maybe the post-trial motion or the motion for a new trial, something like that. I'm sorry. I don't recall that specifically. Okay. I apologize. So Petitioner, in response, cites the case of McGee and argues in his brief that that is contradictory to Wanky and Thompson. It's important to note that McGee was – it was also a Second District case. That was decided before Wanky and Thompson. And in McGee, even though the post-conviction court dismissed the defendant's petition based on forfeiture of his claims, the state didn't argue forfeiture on appeal. The state argued res judicata on appeal. And so that was how the court framed its analysis. It didn't do a full-blown analysis of whether or not an issue not raised at a crankle hearing would result in that issue's forfeiture. They analyzed it through the lens of res judicata, and then they threw in one line at the end of their analysis that said that they didn't think that an issue not raised at a crankle hearing would necessarily result in its forfeiture. But McGee was also distinguishable in that it wasn't a full-blown hearing. It wasn't 36 pages of transcript. It was about four questions that the trial court asked the defendant, and their question, the final question about is there anything else, was ambiguous, which is not the case that we have here or in Wanky and Thompson. So the state's therefore asking that you find in this case that where the petitioner had a full-blown hearing, was given multiple opportunities to say anything, to add any more claims that he wanted to and he chose not to, that that constitutes forfeiture. The petitioner's reason in this case that the record on direct appeal was not fully developed and he shouldn't be rewarded at this point for remaining silent on the issue at the crankle hearing. Even if this court finds that forfeiture doesn't apply, the petitioner provides absolutely no corroboration for his claim that his attorney was ineffective for not investigating his alibi. All he included in his petition was a broad conclusory allegation that his attorney was ineffective for not sending an investigator to Cleveland to find these unknown members of an unknown church at an unknown location in Cleveland. The only thing that he offers by way of specificity is that the church was either right next door to or across the street from the parking lot of a metro hospital in Cleveland, Ohio, but he doesn't even specify which metro hospital location he was talking about. In order to properly support this claim and advance this to the second stage, he would need actual corroboration from these witnesses that verified that he was in Ohio on October 11th through October 13th of 2010 and that they would have testified to that had they been called as witnesses by defense counsel. He doesn't have anything close to that. He basically wants this court to grant him relief based on his unsupported claim that someone somewhere can attest that he didn't do it. His allegations are insufficient to advance his petition to the second stage and this court should deny his request for relief. That he needs to substantiate his claims of corroboration is supported by this court's decisions in both Smith and Moore. Specifically, this court held that the defendant's claim that his attorney was ineffective for failing to call certain alibi witnesses failed on its merits because the defendant did not attach affidavits from those witnesses to his petition, nor did he name them. The court in Smith held that in arguing that counsel failed to investigate his alibi defense and call alibi witnesses on his behalf, the defendant must at a minimum provide the names of the alibi witnesses and state to what they would have testified. And in Moore, this court held that corroboration was necessary to support the defendant's claim that the police planted evidence on him. The defendant in Moore claimed that the affidavit of his co-defendant was lost by no fault of his own, but he failed to show that he ever included it to begin with. The court held that that affidavit, if it said what the defendant suggested, would provide the corroboration needed necessary to advance to the second stage, but the defendant's affidavit alone was insufficient. But just as in Smith and Moore, the petitioner's claim here that his attorney should have investigated his alibi where he provides absolutely no corroboration and no evidence, even if he didn't have affidavits, if he had some sort of corroboration from these witnesses, a signed statement even if it's not notarized, anything to show this is what I would have testified to had I been called and I would have been available, that would have been sufficient to advance this to second stage. He doesn't even meet the bare minimum under Smith because he can't even provide the names of the witnesses in this case. Petitioner cites to McEil and Morris to support his claims that counsel couldn't have made a sound strategic decision not to call his alibi witnesses without investigating them to determine what their testimony would be. But in McEil, the witnesses were known and provided the corroboration for the claims of the defendant in his post-conviction petition. Same as in Morris. Alibi witnesses were known to the defense at the time of trial. Both the defendant and his attorney provided affidavits that they were available and they could have testified. Same thing in Cleveland and Upshaw that were cited by the petitioner. The defendants in those cases were able to specify the people that they said could provide them with alibis, and their alibi witnesses provided affidavits as to what they would have testified to had they been called. And there was no evidence that the defense attorneys knew of their existence and their willingness to testify. I'm sorry, and there was evidence that the defense attorneys knew of their existence and their willingness to testify and their ability to provide an alibi for the defendants before trial. In this case, petitioner offers nothing of the sort. He doesn't even provide the denomination of the church that he's referring to. Every case cited by the petitioner in his brief actually illustrates exactly what he needs here. He needs corroboration from these Cleveland witnesses that say he was there during the relevant time period and that they would have testified to that had they been called and contacted and that they were willing and available to testify. That would have been the bare minimum that he would need to move on to a second stage proceeding in this matter. I'd ask you to wrap up, Counsel. No, I'm sure. So the petitioner offers the reason that he can't find these individuals. He said it's because he was incarcerated. Every post-conviction petitioner is incarcerated. That's how you can start a post-conviction proceeding is by being incarcerated. He argues that the law library was either not available to him or he had limited access. He doesn't explain what it is that he tried to do and was unable to do, which is broadly saying I didn't have an opportunity to find these witnesses. Did he ask any family members to look into it? Did he use Google Maps to perhaps find the location of this church? He doesn't give any explanation. Just a broad conclusory allegation that he didn't have a chance to do it because he had limited access. Furthermore, if this was to advance to a second stage, he's going to be in no different position than he is right now. The second stage counsel that gets provided to him is under the 651C. He is not going to be required to send out an investigator to go and investigate these claims. 651C requires three things, that they consult with the defendant to ascertain his contentions or deprivation of constitutional rights, that they examine the record, and that they make any amendments to the petition that are necessary for the adequate representation of his contentions. Nowhere in that rule is a requirement that the attorney conduct an investigation on behalf of the client to figure out who the members are of an unknown church across the parking lot of one of potentially multiple metro hospital locations over 300 miles away in Cleveland, Ohio, from 14 years ago. In summary, the petitioner's claim of ineffective assistance of counsel based on his counsel's failure to investigate his alibi is forfeited because he could have brought it up at the Franco hearing and could have been addressed on direct appeal. Even if this court does not find that it is forfeited, he does not provide any corroboration for his claim. And for both reasons, we ask that you affirm the first stage dismissal of this petition. Thank you, counsel. Now we'll hear a brief rebuttal. Just a few minutes. Thank you, Your Honor. I want to start by saying what you didn't hear from the state. You did not hear from the state that there is any evidence in this record positively rebutting the defendant's claim that he was in Cleveland where this crime occurred. And that's critical here because what we're trying to find out is whether there's a possibility that an innocent person has been convicted for first-degree murder. And the state doesn't care. By its own reading of the case, it says it's primarily relying on forfeiture. It tries to distinguish McGee by saying that the issue was erased from McGee, but I'll quote directly from McGee. In the court which is published, McGee says, an omission or absence of an assertion at trial is not positive rebuttal of an ameirment in a post-conviction proceeding. Defendant's failure to elaborate further about this issue at the Crankle inquiry was not an affirmative rebuttal of the factual assertions. We disagree that a defendant forfeits issues not raised at a Crankle inquiry. That's pretty clear language that forfeiture issues at Crankle can't forfeit claims for post-conviction, and that's paragraph 41. I'll also note our Supreme Court has been quite clear on this, too. In People v. Tate, 2012, 12214, our Supreme Court wrote, this court has repeatedly noted that a defendant may not preclude an ineffective assistance to counsel claim for what trial counsel allegedly ought to have done in presenting a defense. And it's noting in that case that an alibi claim was not, you know, it quotes West, which notes that an alibi claim was not forfeited by the defendant's failure to preclude it in a post-trial motion. The point is there's no evidence in this record positively rebutting the claims raised in the post-conviction petition. If this court follows Wainky and Thompson, it's going to be going quite far beyond what is currently published law saying that Crankle cannot forfeit claims for post-conviction proceedings. And it's for exactly the same reason that Justice Vichinsky just mentioned. It's forfeiture by ignorance, which is simply unfair for a defendant who, by his own admission at the Crankle hearing, said he didn't know what he was doing. Now, I want to note that the state is simply wrong on saying that corroboration is required. The Post-Conviction Hearing Act says that evidence claims need to be corroborated if possible, but the court will accept an explanation if there is one available. In fact, in People v. Allen, the Illinois Supreme Court wrote that the legislature would accept an explanation for failure to attach evidence further indicates legislative intent that petitions with substantive merit would advance, even where the evidence attached suffers from remedial procedural defects. And that's where we are. We have an allegation that's not rebutted by the record. It suggests that an innocent man has been convicted, and it needs to be placed in the proper legal form, which is what 651C requires. To place it in the proper legal form, counsel would have to conduct an investigation. Counsel, you talk about clear language. When his neighbor discovered him, all beat up and underneath a six-foot dresser, and he asked him what happened, he said, Gilbert did this. Gilbert beat me up. Gilbert took my money. When the paramedics asked what happened, he said, Gilbert did this. When the responding police officer asked what happened, he said, Gilbert did this. When the ER doctor asked, he said, Gilbert did this. When the head trauma, excuse me, when the nurses asked him what happened, Gilbert did it. There's some clear language there. Yes, Your Honor. And we don't argue that Mr. Mikheyevich made those statements. He may have even sincerely believed it. But in People Be White, this court addressed that specifically and said alibi witnesses are not positively rebutted by the record, even if multiple witnesses contradict the alibi witnesses' claims, because that's going to be a credibility determination for the jury to make. And that was also stated in People Be Coleman and, again, in People Be McGee. So the fact that there was evidence from a witness contradicting the alibi statements, that witness's statements were still subject to a credibility determination, and if alibi witnesses came forward, the jury may have made a different credibility determination. So what we're asking for in this case is not that the defendant's conviction be reversed, not that you even get a new trial. We're simply asking that somebody look into these alibi claims that no one has ever investigated to ensure the integrity of this case. Thank you, counsel. Thank you, Your Honor. We will take the matter under advisement and issue an opinion forthwith. Thank you very much. All rise. May I stand before the judge, please?